BAKER v. BEATTIE.   (No. 2269.)

(Court of Civil Appeals of Texas. Texarkana. June 10, 1920. Rehearing Denied June 17, 1920.)

1. **Master and servant** &xref;3(1)—Contract of employment not absolutely void for fraudulent statement.

A contract of employment is not absolutely void by reason of a false representation by the servant that he had never been paid more than $100 in settlement of damages for personal injuries, such a fraudulent statement only

affording ground for avoidance or annulment of the contract at the option of the master, and until actual termination the relation continues to exist.

2. **Master and servant** &xref;139—Proximate cause of switchman's injury defined.

Where foreman directed cars to be switched onto a clear track, but instead they were switched onto a different track, where they bumped into standing cars, injuring a switchman operating a brake, the efficient cause of the injury was the impact of the cars and not the switching onto the wrong track.

3. **Master and servant** &xref;213(3)—Risk of injury from impact of switched cars assumed.

Impact of box cars being switched is a risk ordinarily incident to the work of a switchman, which he assumes, and he cannot recover for injuries caused by being wrenched while operating a brake on top of a box car by an impact of the force usual and ordinary in the switching business.

4. **Master and servant** &xref;297(2)—Findings held inconsistent.

Where the legal effect of a part of the findings of a jury is to establish actionable negligence, and the effect of part of the findings is to establish a want of negligence, but only ordinary assumed risks, the verdict becomes so uncertain by reason of the inconsistent findings that it cannot be made the basis of a judgment.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Action by W. A. Beattie against James A. Baker, receiver. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The appellee sues for damages for alleged personal injuries received while performing the duties of a switchman in the yards of appellant at Houston, Tex. The negligence alleged was:

"That the signal was given for the train upon which he was working to go down into an empty track, but that such signal was negligently and carelessly transmitted to another employé on the switch engine, or was negligently or carelessly given to the employé, or was negligently or carelessly transmitted by one employé to another; and that the employés of the defendant carelessly and negligently shoved the cars upon which the plaintiff was working onto a track containing other cars, and carelessly and negligently jammed or bumped the cars upon which he was working suddenly and violently against the other cars already on said track; and that said violent bumping of said cars threw or twisted him around the brake staff, his foot catching and body twisting, and by reason of which he was injured."

And then follows a description of the injuries. The defendant pleaded general denial, contributory negligence, and assumed risk, and specially that plaintiff in his written application for employment as a switchman made false answers to procure the posi-

tion, and that because of these fraudulent misstatements the relation of master and servant did not exist, and the plaintiff was consequently a trespasser upon the cars at the time of his injury.

The case was submitted to the jury on special issues, and their findings are: (1) That the act on the part of the employés in heading the seven cars on which the plaintiff was riding into a different side track than the one directed by the foreman to be used, causing them suddenly or violently to be bumped against other cars standing on said side track, was negligence; (2) that such negligence proximately caused the injuries to the plaintiff; and (3) that the plaintiff was not guilty of any contributory negligence. The jury further answered:

"No. 7. Did the cut of cars on which W. A. Beattie was riding collide with the other cars with unusual force, or with the force that is usual and ordinary in the switching business? Answer: They collided with the force usual and ordinary in the switching business."

"No. 13. Do you or do you not find that the injuries of the plaintiff, if any, were due to any risk arising in the discharge of his duty as a switchman and ordinarily incident to such work, or do you find that such injury, if any, resulted from the negligence of the servants and employés of the defendant? Answer: We find that the injury resulted from the negligence of the servants and employés of the defendant."

"Special issue requested by the defendant: Do you believe from the evidence the cars came together with unusual force and that plaintiff discovered that they would do so in time, by the exercise of ordinary care on his part, to have protected himself from injury, and failed to use ordinary care to so protect himself? Answer: No."

The evidence shows that the plaintiff was a switchman in the yards of Houston, and at the time in question was one of a switch crew of three, working under a foreman. It was necessary for the crew to place 35 or 40 freight cars on the tracks at the freight house on Commerce street. These cars were loaded with merchandise and were being placed for the purpose of unloading them. The foreman, in the hearing of appellee, directed 7 cars to be put into a sidetrack known as "city No. 1," which at that time was clear of any cars. Appellee was then directed by the foreman to ride on top of the 7 cars so as to stop them by means of the brakes when they reached the end of the track. The cars were not headed into the track directed by the foreman, but by some misunderstanding were headed into the adjoining side track, called "house track No. 2." The latter track had on it at the time 12 merchandise cars. After directing the 7 cars to be put on the side track the foreman uncoupled them from the other cars and then the switch engine put them in motion. According to appellee's evidence, supported by the other witnesses:

"All the kick you had to give those cars was to have the engine shove the slack against them so you can raise the coupling pin, and they will roll by gravity the rest of the way."

The 7 cars struck against the cars already on the side track, and, as appellee says:

"When they struck it twisted me around the brake staff, threw my body around, and my foot caught on something, I don't know what it was, and twisted my left knee," causing injury.

Wm. H. Wilson, Samuel B. Dabney, and John M. King, all of Houston, and J. H. Ranson, of Bryan, for appellant.

K. C. Barkley, of Houston, for appellee.

LEVY, J. (after stating the facts as above). [1] Appellee had been in the employ of the appellant for nearly two years. In his application for employment in the first instance the appellee incorrectly stated his age and his name, and answered "No" to each of the following questions:

"(14) Have you ever sustained a serious or permanent personal injury?

"(15) Have you ever had, or have you now, a lawsuit against any railway company or the receiver thereof?

"(16) Have you ever been paid more than the sum of $100 at one time in the settlement of a claim or lawsuit for damages for personal injuries sustained or alleged to have been sustained by you?"

Appellee had sustained a former injury of his left knee while employed as a switchman in Louisiana, and had been paid for the injury more than $100 by judgment of the court. Appellant insists, under appropriate assignments of error, that as the appellee had procured his employment as a switchman by false statements the contract of employment would be void and the relation of master and servant would not exist. This contention should, it is thought, be overruled. The contract of employment not being rescinded or canceled at the time of the injury, the appellee would be held to be an employé of the appellant. The contract of employment would not be absolutely void because of the alleged fraudulent statements. The alleged fraudulent statements would only afford grounds for a voidance or annulment of the contract of employment at the option of the company. And until the contract of employment was actually terminated by the company on the ground of the alleged fraudulent statements, the relation of master and servant would legally continue and exist. It is stated in Labatt on Master and Servant (2d Ed.) vol. 1, § 96a:

"A contract is not rendered void ab initio by the fact that the master was induced by the servant's fraud to enter into it. Such fraud constitutes a ground for dismissing the servant, or a defense to an action for the wages stipulated." Railway Co. v. Harris, 48 Tex. Civ. App. 434, 107 S. W. 108; Lupher v. Railway

Co., 81 Kan. 585, 106 Pac. 284, 25 L. R. A. (N. S.) 707.

[2-4] It is contended that the findings of the jury are inconsistent with each other and authorized, as a matter of law, a different judgment, and that the court erred in rendering judgment on the verdict for the plaintiff. It is believed that the contention should be sustained. The jury made the finding that in switching the seven cars into house track No. 2, causing the sudden or violent impact against the cars already on the track, there was negligence proximately causing the injuries to the plaintiff. If this finding were all the findings made, then a judgment thereon for the plaintiff was legally warranted. But the jury further found as a fact that the impact of the cars was not with "unusual force," but only "with the force usual and ordinary in the switching business." This later finding was further emphasized by the further finding in the special requested issue that (1) the cars did not "come together with unusual force," and (2) that "the plaintiff did not discover that they would do so in time to use ordinary care to protect himself from injury." There does not appear in the evidence that there was any shunting or kicking of the cars in the operation of the same. If there were no other findings than the latter findings of fact, a judgment for the appellant was legally authorized on the ground that there can be no recovery for injuries due to the ordinary risks of the particular work. There is, then, as seen, repugnancy in the several findings in matters material to the issues involved in the case. The mere fact that the cars were switched into house track No. 2 instead of side track No. 1 did not occasion any injury. The real and efficient cause of the injury was the impact of the cars. This impact, the jury finds, was (1) a sudden and violent jam or bump, but (2) not with "unusual force" and "with the force usual and ordinary in the switching business." Appellee as a switchman would know that every impact is in some measure forcible. If, as found by the jury, the impact causing the injury was a risk ordinarily incident to the work being done, then the employé assumes that risk and cannot recover. 4 Thompson on Negligence, § 4613; 18 R. C. L. p. 676. The railway company would not be guilty of negligence if only the ordinary risk of the work is established as being the cause of the injury. Accordingly, if the risk to which the injury was due was an ordinary one, the appellant is not liable, even if the employé did use ordinary care for his safety. The further finding of the jury on question 13 would not make the verdict certain. The question called for a legal conclusion. Where the jury finds the facts particularly, the court then decides the law arising on them. And where, as here, the legal effect of a part of the find-

ings is to establish actionable negligence, and the effect of a part of the findings is to establish a want of any negligence but only ordinary assumed risks, the verdict becomes so uncertain by reason of the inconsistent findings that it cannot be made the basis of a judgment.

The judgment is reversed, and the cause remanded for a new trial.