## NORTH v. ATLAS BRICK CO. (No. 1828.)*

(Court of Civil Appeals of Texas. 'El Paso. Feb. 4, 1926. Rehearing Denied Feb. 25, 1926.)

**1. Appeal and error ⊜⇒1062(1)—Ordinarily, separate submission of issues might cure error in submitting them as single issue.**

Ordinarily, separate submission of issues might cure error in submitting them as a single issue, if by so doing findings of jury would not be in such conflict as to form a basis on which to predicate judgment.

**2. New trial ⊜⇒60.**

Inconsistent or contradictory findings of jury should be set aside and new trial granted.

**3. Appeal and error ⊜⇒1062(1)—Submission of issue embracing distinct issues of fact held reversible error, notwithstanding that such issues were later submitted separately, where jury's answers thereto were directly contradictory to answer given to first issue (Vernon's Sayles' Ann. Civ. St. 1914, art. 1984a).**

Submission of issue embracing two distinct issues of fact, whether defendant agreed that, if made general manager of corporation, he would improve process of brick manufacture, and whether result of his efforts to do so would be property of corporation, held reversible error, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 1984a, notwithstanding that such issues were later submitted separately, where jury's answers thereto were directly contradictory to answer given to first issue.

**4. Evidence ⊜⇒397(2)—Unambiguous written agreement presumed to contain whole of agreement, and contemporaneous evidence not admissible to vary or contradict terms.**

When parties have reduced their contract to an unambiguous writing, writing is presumed to contain whole of agreement between them, and no contemporaneous evidence is admissible to contradict or vary its terms.

**5. Evidence ⊜⇒417(9).**

Contract may rest partly in parol and partly in writing between same parties.

**6. Evidence ⊜⇒442(1)—Parol contemporaneous agreement, not varying terms of written contract, may be proved when material to show full terms of such contract.**

When parol contemporaneous agreement neither varies writing nor is in conflict with its provisions, but is distinct and independent on details, and it becomes material to show parol agreement to disclose full terms of completed contract, parol agreement may be proved.

**7. Evidence ⊜⇒443(2)—Independent parol agreement as to duties of general manager of corporation held not to vary terms of written agreement to purchase stock in such corporation.**

Independent parol agreement as to duties of defendant as general manager of corporation, constituting an inducement for entering into written contract for purchase of stock in such corporation, held not inadmissible as varying terms of such contract.

**8. Master and servant ⊜⇒62—Evidence of judge's opinion corporation could claim patent for improvement of process held inadmissible, where rendered after relations were entered into.**

Admission in evidence of judge's opinion that corporation could claim patent for improvement of process for manufacture of brick, and reference to such opinion in argument, held error, where opinion was given long after parties had entered into relations for improvement of process for manufacture of brick.

**9. Evidence ⊜⇒443(2)—Admission of evidence under parol agreement that general manager of corporation was to continue as such for balance of current year for protection of corporation's interests held not error.**

Where parol agreement as to duties of general manager of corporation was not inadmissible as varying written agreement for purchase of stock in corporation, admission of testimony that, under such parol agreement, general manager was to continue as such for balance of current year for protection of corporation's interests, held not error.

**10. Master and servant ⊜⇒62—Testimony as to when witness heard manager claimed patent adversely to corporation held immaterial.**

Evidence as to when witness first heard general manager claimed patent for improvement of process for manufacture of brick, adversely to corporation, should have been excluded as immaterial.

**11. Master and servant ⊜⇒62—Corporation's right, under manager's agreement, to improve process, held implied license to use patent process without payment of royalty.**

If corporation should establish parol contract of general manager to improve process of manufacture of brick for which patent was granted to him, and result of his efforts should be property of corporation, its right would be that of an implied license to use patent process expressed in patent without payment of royalty in manufacture of brick at its plant.

Appeal from District Court, El Paso County; B. Coldwell, Judge.

Action by the Atlas Brick Company against Clarence Lupfer North. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Goggin, Hunter & Brown and Lea, McGrady, Thomason & Edwards, all of El Paso, for appellant.

Winter & Winter, J. U. Sweeney, and J. A. Gillett, all of El Paso, for appellee.

WALTHALL, J. This suit was brought in the Sixty-Fifth district court of El Paso county, on April 4, 1925, by the Atlas Brick Company, a corporation, as plaintiff, against Clarence Lupfer North, as defendant, alleging its cause of action in three separate and distinct counts.

First count: It is alleged, in substance, that during the year 1920, and at all times

since, plaintiff has been engaged at El Paso, Tex., in the manufacture of brick; that during the year 1920 competition in the manufacture and sale of brick at El Paso became very keen, and was of such nature that plaintiff realized that the process then used by it for the manufacture of brick was antiquated, and that plaintiff necessarily must make improvements in its process of the manufacture of brick in order to meet competition and continue in business; that defendant represented himself to plaintiff and its officers as an engineer of experience and qualified to make necessary experiments so as to improve the process in the manufacture of brick being made by plaintiff, and, in pursuance of said representations, defendant was elected president and general manager of plaintiff, and was employed by plaintiff to take general charge of plaintiff's business and especially of its manufacture of brick, and of making experiments and devising a method of improvement in the manufacture of its brick, and was employed by plaintiff in such capacity and for such purposes at a monthly salary of $350 per month, and had full and complete authority in the conduct of plaintiff's business; that the $350 per month was by agreement and understanding between plaintiff and defendant to be in full compensation for all services rendered as president and general manager in making experiments, with the view of making improvements in the process of manufacturing brick, and devoting his time, attention, experience, and ingenuity to the interest of plaintiff; that defendant continued in the employ of plaintiff in the capacity and at the salary stated until about the 19th day of January, 1925; that, in pursuance of his employment as stated, and while so employed, defendant made experiments in the process of manufacturing brick at the cost and expense of plaintiff, and with the machinery and at the plant of plaintiff, and with the assistance of employees in the pay of plaintiff; that during all of that time there was a confidential relation existing between plaintiff and defendant.

Plaintiff alleged that it was understood and agreed by and between the plaintiff and defendant, at the time of the employment of the defendant by the plaintiff, that the defendant was to have general charge of the manufacture of the brick by plaintiff, and especially in the development of a process for the improvement of the product manufactured by the plaintiff, "and that the improvement in the process was for the benefit of the plaintiff company, in consideration of the compensation paid the defendant by the plaintiff, any device, invention, or improvement made in the process of the manufacture of brick was to become the property of the plaintiff company." It is further alleged that, about the time the said experiments in the manufacture of brick was begun, an officer of plaintiff company, other than defend-

ant, suggested to defendant that he try a mixture of concrete and lime, or cinders and lime, or cinders, concrete, and lime, and ascertain the effect in the process and in the product resulting; that plaintiff, believing that the process so resulting from the said experiments made at its plant by defendant, and at plaintiff's expense, that the title to the process would result and vest in plaintiff, permitted defendant to continue in the absolute control of the operations of plaintiff company; that defendant, while so employed by plaintiff, continued to make experiments until he perfected the process of manufacturing brick from a mixture of cinders and lime, and sold on behalf of plaintiff the product of such manufacture of brick made by such process for many months before making an application for a patent, and that finally, on or about the 26th day of June, 1922, defendant, while so in the employ of plaintiff, made application for a patent for the process of manufacture of brick so devised at the expense of plaintiff, in defendant's own name rather than and instead of in the name of plaintiff, and eventually procured a patent in his own name for said process but caused the plaintiff company to continue to use such process and invention in the manufacture and sale of brick without the payment of any royalty whatever, both before and subsequent to the application and issuance of the patent, and that said patent process became and is now the very foundation stone of plaintiff company's business and success; that patent for the aforesaid process of manufacture of brick was issued to defendant by the United States letters patent No. 1,440,238, December 26, 1922; that both before and since the application and issuance of said patent defendant has manufactured, advertised, and sold, and caused to be advertised, manufactured, and sold, while so acting as president and general manager of plaintiff company, and in the trust relationship existing, the product manufactured by plaintiff company under the name of Atlas Klinker Brick and Atlas Grey Klinker Brick, thereby expressly and impliedly representing that the patent process for manufacturing said brick is the property of plaintiff company, and that at all times from the time of his election and employment by plaintiff, in the capacities aforesaid, until a short time before defendant's connection with plaintiff as stated was terminated on January 19, 1925, defendant continued to represent to those holding the large majority of interest in the stock of the Atlas Brick Company, that he was making the aforesaid experiments for the purpose of improving the process in the manufacture of brick for the benefit and use of plaintiff, Atlas Brick Company, and that he was doing everything within his power to bring about the success of plaintiff; that, by reason of the relation in employment of plaintiff and defendant, as above, and by reason of defendant's acts in

making the said experiments in the process of making brick, defendant, in applying for and procuring said patent, was acting in a trust and fiduciary relation and capacity, and as trustee for plaintiff in taking title to said patent process in his own name. · Plaintiff alleged demand upon defendant for conveyance of said· patent and patent right to said process and his refusal to convey, that defendant has made certain contracts purporting and intending thereby to convey to others the right to use said patent process in competition with plaintiff, and has been paid large sums of money, the amounts unknown to plaintiff, for contract right to use said patent process or for royalties in the manufacture of brick; and that plaintiff is entitled to and demands an accounting as to all sums of money so received; defendant's refusal to account therefor.

Second count: Plaintiff adopted its allegations in its first count, and alleged further that defendant, in breach of his said trust and fiduciary relationship, while pretending to represent plaintiff, entered into a pretended contract with himself, or with the partnership of Sheehan & North, or with the El Paso Building Material Company, of which the whole or major interest was owned or contracted by defendant, for the sale of the entire product of plaintiff, Atlas Brick Company, to himself, at prices, places, and times stated, not necessary to state here in detail, greatly to the personal advantage of defendant; all of which plaintiff demands an accounting.

Third count: Plaintiff adopts the allegations of its first count, and further alleges that, at the time defendant was elected president and general manager of plaintiff company, plaintiff had a certain lease of the ground occupied by its brick plant at an annual rental stated, said lease renewed from year to year with the understanding that said lease could and would be renewed from year to year at the request of plaintiff; that, in violation of said understanding as to the renewal of said lease, and in violation of his duty to plaintiff, defendant fraudulently represented to the lessor of said lease that he or Sheehan & North Company, had acquired the ownership of plaintiff, and thereby induced the said lessor of said lease to grant to him, individually, or to Sheehan & North Company, or to the El Paso Building & Material Company, a term lease to the ground occupied by plaintiff's plant, and charged to plaintiff and caused to be paid to him, or Sheehan & North, or said building and material company, a rental for said ground of the aggregate amount stated, and plaintiff sued to recover all amount in excess of its former lease contract.

Plaintiff prayed for judgment decreeing to it the said patent and the exclusive use of said letters patent and patent process, patent rights, to be vested in it free of any royalties to defendant, and the right to assign same, for injunction restraining defendant from manufacturing brick under said patent process, for judgment for any profits defendant may have realized out of the sale of said patent right, or letters patent, or royalties, or rents for the use of said patent in the manufacture of brick, and in said accounting, and for damages for his breach of trust, for rentals, and for relief general and special.

Defendant answered by general demurrer, general· denial, specially denied that he was ever employed by plaintiff for the purpose of making improvements in its process of making brick, or doing any of the things alleged, but alleges on the contrary, that on or about July 12, 1920, he and J. P. Sheehan, with whom he was associated in business, entered into a written contract with F. B. Stuart, who at that time was a large majority stockholder of the Atlas Brick Company, in which contract said Stuart contracted and agreed to sell to Sheehan & North all of the capital stock in said Atlas Brick Company of which he was the owner, for the price and subject to the terms and conditions therein stated, and pleaded, in the answer, the said written contract made a part thereof. The written contract is lengthy, but, briefly stated, it recites that Stuart is the owner of between 600 and 700 shares of the capital stock of the Atlas Brick Company, which he contracted and agreed to sell to Sheehan & North for $75 per share, and which they agreed to purchase at that price, conditioned that Stuart place same in escrow free of incumbrances. The contract stipulates the time and manner of payment. It provides for a resignation of a majority of the board of directors and the president and secretary of the corporation, and that, as long as Sheehan & North complied with the terms of the written contract, they should have the right to vote all stock placed in escrow under the contract the same as if delivered to them; that Stuart was to pay all bills and indebtedness owing by the corporation or incurred prior to July 12, 1920, as well as to the corporation prior to that date, and, should he fail to do so, Sheehan & North should have the right to pay and apply that amount on the payments to Stuart under the contract on the purchase price of the shares of stock. The contract contained certain cancellation and forfeiture provisions and for the removal of the share of stock from escrow upon forfeiture, and that, upon termination of the contract, "any and all liability of said J. P. Sheehan and Clarence L. North incurred under this contract shall be immediately canceled and terminated, provided all outstanding debts of said corporation, incurred during this contract, are paid."

It further provided that, immediately upon execution of the contract, and as soon as the stock had been placed in escrow, and as soon as Sheehan & North had paid to Stuart $2,000 in cash, Sheehan & North, as owners

of a majority of the stock of the corporation, should have the right to call a meeting of the stockholders for the purpose of electing the board of directors and to take over the entire management and control of the corporation and operate it as in their judgment may seem fit and proper.

Defendant then alleged that, pursuant to the terms and provisions of said written contract, which he alleged was the only agreement had with plaintiff Atlas Brick Company, or F. B. Stuart, he became an officer of the said corporation, and continued as such officer, managing and controlling such affairs of said business until during the month of January, 1925, when his connection therewith ceased. He further alleged that the said written contract was in reality nothing but an option or escrow agreement, and that he and Sheehan, having dissolved their partnership relations, thereafter, by mutual agreement with Stuart, said contract was terminated on the 25th day of August, 1924, in accordance with a written agreement between said Stuart and defendant on the 15th day of October, 1923. Defendant alleged that the real inducement and reason for the execution of the said contract and escrow agreement of July 12, 1920, was Stuart's desire to sell out his interest in the plaintiff company and move to Chicago, and that never at any time or place did he enter into any agreement with either Stuart or plaintiff in regard to any patent. He alleges that at no time did he ever agree with Stuart, with the plaintiff, or any one, that any one other than himself should ever directly or indirectly have or acquire by assignment or otherwise any interest or property right whatsoever in or to said patent; that the process for which the patent was issued to him was discovered by him upon his sole initiative and upon his own investigation, independent of any one else, and at his own expense, cost, time, liability, and money; that he is the sole owner of the patent, letters patent, and patent rights; and denies that plaintiff at any time, by any agreement, understanding, or act or conduct on his part, acquired any interest in said patent or right to use the process covered by the letters patent.

Replying to plaintiff's plea for an accounting, defendant stated that he had sold and delivered for plaintiff an amount of brick stated, manufactured under said process, for which plaintiff was paid the usual market prices, and alleged contracts and arrangements with parties, naming them, for the use of said patent rights. On the issue of the lease of the ground occupied and used by plaintiff, defendant alleged that the owner of the leased ground, the El Paso & Southwestern Railroad Company, having refused to renew its lease to plaintiff, made lease to him, with additional land, for the sum stated, per annum.

Plaintiff, replying, alleged that the contract pleaded by it was fully performed on its part, and the monthly salary as alleged was paid to defendant each month during the time of his employment; that the contract pleaded by defendant to make improvements for plaintiff in the process of making brick was a part of the consideration of the said written contract, whereby defendant was made president and general manager of plaintiff, and a part of the consideration and inducing cause of the election of defendant as president and general manager of plaintiff. It admitted the copartnership of Sheehan & North Company, and the contract to purchase the stock; alleged certain provisions of said written contract which we will hereafter refer to when necessary to do so.

Defendant replied to said supplemental pleading of plaintiff by pleas of two and four years statutes of limitation.

The case was tried to a jury, and submitted upon special issues as follows:

"Question No. 1: Do you find from a preponderance of the evidence that the defendant, C. L. North, agreed that, if he were made president and general manager of the plaintiff, Atlas Brick Company, that he would undertake to improve the processes of manufacture of the product, and that the result of his efforts would be the property of the company? Answer 'Yes' or 'No.' " The jury answered: "Yes."

"Question No. 2: Do you find from a preponderance of the evidence that the defendant, C. L. North, while in control and management of the plaintiff company and its properties used the time, material, and labor of the company in aid of the discovery or invention of the Klinkerbrick? Answer 'Yes' or 'No.' " The answer was: "Yes."

"Question No. 3: What sum do you find to be a fair price for the plaintiff company to have received for its entire product, delivered as it was, during the time that the defendant, C. L. North, was president of the company?" Answer: "Cost of production plus 2 per cent."

"Question No. 4: What was the proportionate rental value of the land leased to the Atlas Brick Company by Sheehan & North Company to the rental value of the land leased by the El Paso & Southwestern Railroad Company to Sheehan & North Company?" Answer: "50 per cent."

"Question No. 5: At what rental could the land occupied by the Atlas Brick Company have been had from the El Paso & Southwestern Railroad Company, during the time that the defendant North was president?" Answer: "We don't know."

The court also submitted the following special issues requested by defendant:

"No. 5A. Do you find from a preponderance of the evidence that the defendant, North, agreed with the Atlas Brick Company that, if he were president and manager of the brick company, he would undertake to improve the processes of manufacture of the product of the plant? Answer 'Yes' or 'No.' " Answer: "Yes."

"No. 7. Was it at any time understood or agreed between the defendant, North, and the Atlas Brick Company that any process or in-

vention North might devise or invent for the manufacture of brick should be the property of the Atlas Brick Company? Answer 'Yes' or 'No.'" The jury answered: "No."

"No. 8. Do you find from a preponderance of the evidence that the defendant, North, agreed with the Atlas Brick Company that the result of his efforts would be the property of the company? Answer 'Yes' or 'No.'" The jury answered: "Yes."

"No. 9. Did the defendant, North, consume or spend any time, material, or thing of substantial value belonging to the Atlas Brick Company in the invention, discovery, or development of the process afterwards patented by him? Answer 'Yes' or 'No.'" Answer: "Yes."

"No. 11A. Was $900 per annum a fair and reasonable rental for the premises occupied by the Atlas Brick Plant from October 12, 1920, to January 19, 1925? Answer 'Yes' or 'No.'" Answer: "No."

To No. 11B the jury found the reasonable rental value of the premises as inquired about to be $500.

"No. 12A. · Do you find from a preponderance of the evidence that any net profit accrued to the defendant, North, through the sale of brick manufactured at the Atlas Brick Plant from October 12, 1920, to January 19, 1925? Answer 'Yes' or 'No.'" The jury answered: "No."

The court overruled the motion of defendant for judgment on the jury's findings, and sustained that of plaintiff, and entered judgment for plaintiff, substantially, to the effect, that the Atlas Brick Company recover of Clarence L. North the property and title in the patent, and the patent process for the manufacture of brick thereunder, issued to defendant, North, be vested in the Atlas Brick Company, assignments of all contracts made by North with parties for the right to make brick under the patent process, enjoins North from selling, assigning, or contracting with reference to said patent right, and from collecting any sums of money or royalty or other profits under any contract theretofore made by him, and from interfering with the Atlas Brick Company in its business in the manufacture and sale of brick and in the use of said letters patent and patent process, entered judgment for damages in favor of the Atlas Brick Company and against North, under the second count in the sum of $2,836.35, with interest, and for damages under the third count in the sum of $1,774.95, and interest, and for costs.

On the overruling of defendant's motion for new trial, defendant duly excepted, gave notice of, and has perfected, this appeal.

## Opinion.

It is insisted under several propositions that the first special issue submitted to the jury embraces two separate and distinct issues of fact, both strongly contested by the pleading and the evidence; the first as to whether North agreed that, if he were made president and general manager of the Atlas Brick Company, he would undertake to improve the process of manufacture of the produce, and, second, whether the result of his efforts to do so would be the property of the brick company. The jury was confined to one answer, "Yes" or "No," when they might answer one inquiry "Yes;" and one "No." It is also insisted that, where the answers to the same issues are contradictory and in conflict with each other, no valid judgment can be rendered thereon, and, if rendered,· it is reversible error not to set aside the judgment and verdict, on motion, and grant a new trial.

The several propositions as above will be considered together. The contentions, as stated, are well taken. Our statute (Vernon's Sayles' Ann. Civ. St. 1914), article 1984a, provides:

"Special issues shall be submitted distinctly and separately, and without being intermingled with each other, so that each issue may be answered by the jury separately."

See, also, Lancaster & Wallace v. Rogers & Adams (Tex. Civ. App.) 258 S. W. 283, and the cases there referred to.

[1-3] It is insisted, however, by appellee, that, though question No. 1 may have been duplicitous, the error was cured by questions Nos. 5A and 8, submitted by appellant, involving the same issues. By reference to questions 5A and 8, without restating them here, it will be seen that the two issues of fact are submitted distinctly and separately, so that the jury could, and in this instance the jury did, answer each separately. Ordinarily, we think a separate submission of the issues might cure the error, if by so doing the findings of the jury would not be in such conflict as to form a basis upon which to predicate the judgment.· Here, however, in response to question 1, submitted under the court's general charge, the jury found that North agreed that, if he was made president and general manager of the Atlas Brick Company, the result of his efforts to improve the processes of making brick for the company would be the property of the company. While under special question No. 7, submitted by appellant, the jury found that North did not agree with the Atlas Brick Company that the result of his efforts would be the property of the company, thus making an inconsistent and a direct conflict in the finding upon what seems to be one of the most important issues of fact in the case. We are not able to harmonize the two findings. It has often been held in this state that findings of the jury, inconsistent or contradictory, should be set aside and a new trial granted. Baker v. Beattie (Tex. Civ. App.) 222 S. W. 658; Kansas City Life Ins. Co. v. Jinkens (Tex. Civ. App.) 202 S. W. 772; Crow et al. v. Monroe et ux. (Tex. Civ. App.) 273 S. W. 886.

We have, in the preliminary statement of

the case, indicated that judgment was entered decreeing the entire property and title in the invention or letters patent covering the patent process for making brick issued to appellant, vest in appellee. The judgment, as to that feature of it, has no basis in the jury's findings except as expressed in question No. 1, and the jury's answer thereto. A new trial, we think, should have been granted.

In view of the disposition we make of the case, it would be best not to discuss the question at this time, as to whether there is any evidence to justify the submission of question No. 1, as insisted by appellant under his third proposition:

The same conditions arising out of the submission of question No. 3, and others occurring during the trial, may not occur should another trial be had, and we refrain from a discussion of such issues.

During the trial, witnesses Sheehan and Stuart were permitted to testify, over objection, to conversations had between North and Stuart, prior to, or contemporaneous with, and as alleged by appellee, leading up to and as inducement, and in part consideration for, the execution of the written contract of July 12, 1920, pleaded by appellant, in which conversations the duties of North as president and general manager were stated, and in which conversations it was stated that he (North) was to make improvements in the plant, and the process theretofore used by the Atlas Brick Company in making brick, and that the improvements when made were to be for the benefit of the Atlas Brick Company, for the purpose of showing the prior or contemporaneous express parol agreement, declared upon by appellee, but not incorporated in or made a part of said written contract. It is insisted by appellant that said conversations were, in effect, attempts at impeaching or varying or adding to the written contract.

The various conversations had embraced the greater part of the evidence offered by appellee, and by which it was sought to establish its allegation, after alleging the purpose it had of employing appellant:

"That it was understood and agreed by and between the plaintiff and defendant, at the time of the employment of the defendant by the plaintiff, that the defendant was to have general charge of the manufacture of brick by the plaintiff company, and especially in the development of a process for the improvement of the product manufactured by the plaintiff, and that the improvement in the process was for the benefit of the plaintiff company; in consideration of the compensation paid the defendant by the plaintiff, any device, invention, or improvement made in the process of the manufacture of brick, was to become the property of the plaintiff company."

The witness Sheehan was permitted to testify, over objection, as to what North agreed with Stuart that he (North) was going to do for the Atlas Brick Company after he became president and general manager. The witness stated:

North "was to have charge of the manufacture of brick; he was to devise ways and means of improving the property and improving the process, and to make such experiments as, in his mind, were best for the betterment of the brick, and take that up with me (witness) and Mr. Stuart, and for the benefit of the company, the corporation. That is the same agreement we (Sheehan and North) had with Mr. Stuart, and that is about all there was to it. I was getting $350 for my end of the business, and Mr. North was getting $350 to devote his time to the Atlas Brick Company.

"Question: Was there anything said during that period as to whether or not this was being made for the use and benefit of the company by Mr. North? A. Well, that was our understanding and our agreement."

Other questions and answers similar in tenor and effect, as indicated by several bills of exception, were admitted, but, for the sake of brevity, we omit to state them, as the same question of their admissibility arises to them as to the above. To the above, and before the several statements of the witness were made, appellant objected to the evidence as to the duties of North as president and general manager; that same was immaterial and irrelevant, was not the best evidence, the company having by-laws prescribing the duties of the general manager; that the evidence as to what North agreed with Stuart he would do in devising ways and means, in improving the process then used by the Atlas Brick Company in making brick, and that the improved process should be for the use and benefit of the company, added to and varied the terms of the written contract that resulted from the several parol conversations. Appellee bases its cause of action upon what it claims to be the understanding and agreement of North and Stuart expressed in the several conversations preliminary to but leading up to the making of the written contract of July, 1920. Its position, as expressed in its several counter propositions, is to the effect that its suit is not based upon the written contract—

"but is based upon an oral agreement, separate and distinct from the said written agreement, entered into at the same time between Sheehan and North, and Stuart, * * * in reference to improvements to be made in the process of the manufacture of brick, and that the written agreement does not exclude a distinct collateral oral agreement, and that parties to contracts may come to an independent agreement on detail as to the execution thereof at the time of contracting, as well as afterwards, and, hence, there was no error in admitting the evidence as to the nature and terms of the oral agreement."

The written contract has elsewhere been briefly outlined. It contained none of the matters inquired about in any of the several

conversations stated by the witnesses. The statement as to the several duties of North as general manager of the Atlas Brick Company seems to be special and peculiar to the undertaking to improve the process of making brick, if such was his understanding, and such as would not ordinarily be a part of the general by-laws of the corporation, and we see no reason why, ordinarily, and in the absence of the contemporaneous written contract, as a result of the conversations, such special duties could not be shown as was sought to be done by the evidence. The admitted evidence as to certain conversations had between North and Stuart prior to, or contemporaneous with, but leading up to, the making of the written contract, and in which conversations the agreement declared upon as stated, is a more serious question. The written agreement, as we view it, is distinctively a stock-selling proposition between Sheehan and North on the one part, and F. B. Stuart, individually, and in his own behalf, on the other part. There is nothing in the contract to indicate that either party to the contract was contracting for or in behalf of the Atlas Brick Company, or in its behalf as having any interest in the matters of the sale of the shares of the capital stock of that corporation. There is in the contract, no mention made or reference to any prior parol agreement, or of any inducement or consideration for the sale or purchase of the stock other than the money consideration to be paid for per share, and the times and manner of such payments.

In appellee's first supplemental petition and its trial amendment, however, as we understand those pleadings, appellee adopted the written contract of July 12, 1920, and made it a part of its pleading upon which it sought to prove the prior parol contract or agreement made the basis of its suit, and sought to make the evidence admissible upon the ground that the prior parol agreement was a part of the inducement and consideration for the written contract, and, in addition to the money consideration paid and to be paid for the Stuart shares of stock, and in addition to the monthly salary paid North, and that, by reason thereof, Stuart, then the president of the Atlas Brick Company, resigned as president and permitted North to be made president and manager of the company, and permitted Sheehan and North to vote his stock, and placed said stock in escrow, and that, by reason of said inducement and consideration on the part of appellee, North accepted the office of president and manager of appellee corporation, and acted as such in the subsequent operation of the brick plant, and that while so acting discovered the improved process of making the klinker brick, which process was subsequently, and while in the employ of appellee, as stated, patented by North in his own name.

[4] We concur in the contention made by appellant, as a proposition of law, that, when parties have reduced their contract to writing, which expresses the terms and character of it without uncertainty as to the subject or nature of the agreement, it is presumed that the writing is the repository and contains the whole of the agreement made between them, and hence the rule that no contemporaneous evidence is admissible to contradict or vary the terms of a valid written agreement. As said by Judge Stayton, in quoting the above rule from Self v. King, 28 Tex. 553, to depart from it would introduce into the business of a people an uncertainty disastrous to the best interests of society, and remit parties for the determination of their rights to the treacherous memories of men. Belcher v. Mulhall & Scaling, 57 Tex. 17. The trouble lies in applying the rule to a given state of facts. As said in the Mulhall-Scaling Case, supra, there is a class of cases in which it has been held that matters collateral to and yet distinct from the subject-matter of a writing may be shown by parol, where the evidence does not contradict or vary the writing, but is consistent therewith, as illustrated in Cox v. Bray, 28 Tex. 259, and Thomas v. Hammond, 47 Tex. 54, where the parol agreement, and the writing are collateral and independent facts, entirely consistent with each other, but together presenting the result of the entire transaction or agreement between the parties. See, also, Pierce Fordyce Oil Ass'n v. Woods (Tex. Civ. App.) 180 S. W. 1181; 13 C. J. 598, discussing distinct agreements, and cases under note 90.

Here, as we view it, the parties to the written contract are apparently not the same as to the parol agreement sought to be proved by the evidence admitted over the objection of appellant in what is alleged to be an express parol agreement, and sought to be established as the basis of a part of appellee's cause of action, Clarence L. North and the Atlas Brick Company, acting by and through its president, F. B. Stuart. Whatever the parol agreement was as to its terms and conditions, it is clear that North thereafter entered into the employment of the Atlas Brick Company, and not into the employment of F. B. Stuart. As stated above, the Atlas Brick Company was in no sense a party to the written contract. In that contract Sheehan and North were contracting with Stuart individually and personally for his stock in the Atlas Brick Company. It may be and most probably was, as stated, that in their several conversations Sheehan and North contemplated entering into the employ of the brick company, and also into the purchase of Stuart's shares of stock. In that sense the parol agreement, if any, and whatever it was, was evidently a part of the inducement or consideration, or at least within the contemplation of all parties, for entering into the written agreement for the purchase of the Stuart

stock. It is nowhere suggested in the pleading or evidence that Sheehan and North would have entered into the written contract had they not been put in full charge of the brick plant. It seems an undisputed fact, both pleaded and shown by the evidence, that all the parties contemplated an effort to improve the process of making brick at that plant, or the disposition to be made of the improved process when accomplished; yet nothing is said in the writing about it.

The question is then presented: Could any previous or contemporaneous parol agreement as to North's duties as president and manager of the company's brick plant, or any parol expressed obligation he may have assumed in entering the employ of the company, and not expressed in the writing, nor fairly within its contemplation, be held to add to, or vary or in any way change the terms of the writing?

[5-7] We think it a well-established rule that a contract may rest partly in parol and partly in writing between the same parties; that is, the parol or the writing may be and express a more comprehensive transaction than the other. Thomas v. Hammond, 47 Tex. 43. There is much difficulty in laying down a test by which courts reach the conclusion that a writing is only intended as a part of a transaction, and not the embodiment of the whole contract. However, it may be safely said that, when a parol contemporaneous agreement neither varies the writing nor is in conflict with any of its provisions, but is distinct and independent on details, as we think the matters here resting in parol show to be, and it becomes material to show the parol agreement in order to disclose the full terms of the completed contract, the parol agreement may be proved. We have concluded the court was not in error in admitting evidence of such parol agreement as is alleged in plaintiff's pleading.

Over objection of appellant that it was immaterial and irrelevant, witness Sheehan was permitted to testify, in substance, that North had showed him an opinion of Judge Hunter in which Judge Hunter had expressed his opinion to North that the Atlas Brick Company would have a right or claim to the patent involved in this controversy; also that one of appellee's attorneys, in his argument to the jury, referred to and discussed the evidence of Sheehan as to the opinion of Judge Hunter.

[8] We think both the admission of the evidence and the reference to it in the argument error. The opinion was necessarily given long after the parties had entered upon their relations to each other in the matter of the improvement of the process for the manufacture of the brick, for which the patent was granted. The opinion could not have influenced or been in the mind of either party in entering into any of their previously formed relations to each other, so that it could be said that their minds met as to the right or claim of the Atlas Brick Company in entering into any parol agreement then in the making or in contemplation. The rights of the parties as to the interest or ownership of the patent or the patented process must arise out of the express agreement of the parties themselves, as developed by the facts, and at the time of entering, and not out of any opinion subsequently expressed. There could be no intention as to the right or interest in the patent or the patent process, common to the two parties to any express agreement, as here alleged, unless the intention as to such right or interest is declared or expressed by the parties at the time of entering into the agreement. To make the opinion admissible, it should appear that it preceded or was contemporaneous with the agreement, so as to show that the parties contracted with reference to it.

[9] We think there was no error, as complained of in the thirteenth point in permitting the witness Sheehan to testify that under the parol agreement North was to continue as president and manager in the process of making brick for the balance of the current year, 1920, with the understanding and with the agreement that he would so continue in that capacity for the protection of the company's interest. The point of objection is not made clear.

[10] It was immaterial when the witness Sheehan first heard of North claiming the patent adversely to plaintiff and the evidence should have been excluded. We think the court was not in error, as claimed in appellant's point 15, in excluding as evidence Exhibit B. The statement offered was made by Sheehan, and disclaimed any interest in himself in the patent or patent process. His interest, if any he ever claimed, is not involved in this controversy.

In view of another trial, we omit any discussion of the matters suggested in points 16 and 17 and points subsequent thereto.

In view of another trial, we have thought it not amiss to further say that, under the record before us, it is our opinion that appellee, Atlas Brick Company, was not entitled to that portion of the judgment awarding to it the property and title in the patent and the patent process for the manufacture of brick thereunder, issued to North, nor to have same vested in the Atlas Brick Company, nor to the assignments of contracts made by North with parties for the right to make brick under the patent process, nor to have North enjoined from selling, assigning, or contracting with reference to said patent rights, nor from collecting any sums of money or royalty or other profits under any contract theretofore made by him.

[11] We are of the opinion that if, upon another trial, Atlas Brick Company should

establish the parol contract alleged in the petition, the extent, and the full extent, of its rights to recover as to the patent and its property rights therein would be that of an implied license to use the patent process expressed in the patent, without payment of royalty, in the manufacture of brick at its plant, at El Paso, Tex., which property right is sometimes designated a "shop right."

The cases we refer to, without reviewing any of them, as sustaining the above opinion, and thought to be applicable, are found in the report of the case Wireless Spec. App. Co. v. Mica Condenser Co., 131 N. E. 307, 239 Mass. 158, 16 A. L. R. 1179 et seq. They are Hapgood v. Hewitt, 7 S. Ct. 193, 119 U. S. 226, 30 L. Ed. 369; American Stay Co. v. Delaney, 97 N. E. 911, 211 Mass. 229, Ann. Cas. 1913B, 509; Eustis, etc., Co. v. Eustis, 27 A. 439, 51 N. J. Eq. 565; Pressed Steel Car Co. v. Hansen, 137 F. 403, 71 C. C. A. 207, 2 L. R. A. (N. S.) 1172.

For reasons stated, the case is reversed and remanded.