WIRELESS SPECIALTY APPARATUS COMPANY *vs.* MICA CONDENSER COMPANY, LTD. & another.

SAME *vs.* MICA CONDENSER COMPANY, LTD. & others.

Suffolk. March 7, 1921. — June 3, 1921.

Present: RUGG, C. J., BRALEY, PIERCE, CARROLL, & JENNEY, JJ.

*Agency,* Fidelity of agent. *Invention. Patent.*

While an invention made by an employee in the general course of his employment and at his employer's expense, irrespective of its value or the importance of its control to the success of the employer's business, is the property of the employee unless by the terms of his employment or otherwise he has agreed to transfer to his employer its ownership as distinguished from its use, where an employee, while wholly engaged for his employer as his sole employment in experimental work to develop a method of manufacturing magneto condensers, made inventions involving important changes and improvements which, combined with others of minor importance, constituted a change, improvement or invention in the general process of the manufacturing of magneto condensers, the nature of the employment impressed on the employee such a relationship of trust and confidence as estopped him from claiming as his own property that which he had brought into being solely for the benefit and at the express procurement of his employer; and this result is not affected by the fact that there was no express understanding between the employer and the employee as to further inventions.

A manufacturer may maintain a suit in equity against former employees and corporations which they had formed and in which they are the sole stockholders, to enjoin the use or disclosure, in the manufacture and sale of articles in competition with the plaintiff, of inventions, made by the individuals while in the employ of the plaintiff and engaged as their sole employment in experimental work to develop a method of manufacturing a certain article, and of secret processes and confidential information which had been obtained by the individual defendants while in the plaintiff's employ.

An employee, in leaving his employment, has a right to use his general knowledge, experience, memory and skill; but he has no right to use or to disclose any secret

processes or information which his employer was entitled to keep for his own use and as to which, as against the employee, the employer has exclusive property rights.

Two BILLS IN EQUITY, filed in the Superior Court on January 30, 1920. The first suit was against two corporations, Mica Condenser Company, Ltd., and Watson Brothers, Inc., and thereby the plaintiff sought a decree that "the defendants and each of them be required and enjoined to assign forthwith to the plaintiff all right, title and interest in and to said applications for letters patent filed by said McPherson, [and described in the opinion] and in and to the inventions covered thereby, and in and to the patent or patents to be issued thereon, and to that end that said defendants be required to execute a formal assignment in writing in proper form to this effect." The plaintiff also sought damages. The second suit was against the same corporations and also against William J. Barkley, Arthur Watson, Elbridge Watson, Charles E. Watson, Aubrey R. Goodwin, Lester F. Keene, John Danahy, Edith Martin and Mary G. Illingsworth, and the plaintiff thereby sought decrees (1) that its rights to the trade secrets described in the opinion be established; (2) that "the defendants and each of them be perpetually enjoined from making any further use, directly or indirectly, of any of the secret processes or apparatus referred to herein, or of any secret processes or apparatus whatever belonging to the plaintiff, and from making any further use, directly or indirectly, of any information or knowledge relating to processes or apparatus of the plaintiff or in any manner relating to the plaintiff's business acquired or obtained by said Goodwin, McPherson, Keene, Danahy, Martin or Illingsworth during the period of their employment by the plaintiff;" and (3) "from making any further disclosure to any person whatsoever of any knowledge which they may have heretofore acquired regarding said secret processes and apparatus, or regarding any secret processes or apparatus belonging to the plaintiff, or relating in any manner to the plaintiff's business;" (4) that "the defendants and each of them be required to turn over and deliver to the plaintiff any drawings, sketches, blue-prints, engineering or cost figures, notes, correspondence, or other data of any kind which were a part of or were copied or abstracted from the plaintiff's files and which have been secured by the defendants through

said Goodwin or otherwise, and all copies thereof;" and (5) that an accounting be had and an assessment made of the damages "which the plaintiff has suffered by reason of the wrongful acts of the defendants as aforesaid, and the profits which the defendants and each of them have gained thereby, and that the defendants and each of them be decreed to account for and pay to the plaintiff said damages and profits, and that plaintiff have execution therefor."

No service having been made in the second suit upon Charles E. Watson, the bill was dismissed as to him.

The suits were heard together by *Lawton*, J., successive commissioners having been appointed under Equity Rule 35 to take the testimony. Material facts found by the judge are described in the opinion. The judge reserved and reported the suits on the pleadings, the evidence and his report of facts for determination by this court.

*R. G. Dodge*, (*H. F. Lyman* with him,) for the plaintiff.

*S. C. Rand*, (*A. MacLeish* with him,) for the defendants.

JENNEY, J. The Wireless Specialty Apparatus Company is the plaintiff in two suits, both relating to the same subject matter and tried together. During the world war the plaintiff made radio condensers for the United States government. On the signing of the armistice, it became apparent that this industry would be seriously affected if not ended, and the plaintiff's officers conceived the idea of producing magneto condensers to be sold to manufacturers of electrical apparatus. By June, 1919, the six employees then remaining in the plaintiff's condenser department were employed in experimental work in developing a method of manufacturing such condensers. This work was continued until about October, 1919, when the production of the condensers began. The work was substantially all performed in the plaintiff's shop, with its tools, at its expense, and under the general direction and supervision of one Priess, its chief engineer. Some examination had been made by the chief engineer, and by other persons, of the methods in use to accomplish the desired result. The judge found that, in course of the experimentation, "in at least three respects, important changes, improvements or inventions . . . [had] been made," which "combined with others of minor importance . . . constitute a change, improvement or invention in the . . . gen-

:eral process " of manufacture of magneto condensers.  It is notice-able that the findings characterized the result of this experimental work as "changes, improvements or inventions," but they also are declared to be "substantial and valuable, tending to reduce the cost of production and to improve the quality of the product." Later they are several times expressly described by the judge as inventions.  Applications were made by the defendant McPherson for the issuance of letters patent upon these inventions, which applications have been assigned by him to Watson Brothers Inc. and by it to the Mica Condenser Company, Ltd., who are defendants in both suits.  The plaintiff in one suit seeks to compel the assignment to it of said applications and of the inventions covered thereby; and in the other to enjoin their publication, manufacture or use by the corporations who are defendants in the first suit and by certain former employees of the plaintiff, on the ground that the inventions constitute secret processes of which the plaintiff is the owner.  In the second suit other relief of a kindred nature also is sought.

We consider the findings of the judge on the basis that they determine that the changes and improvements were in fact inventions which must be considered as patentable.  The parties have so treated them.

These inventions as found and described by the judge are as follows: " (1) in the machine for applying varnish to the sheets of mica used in the condenser, and by the use of copal varnish in the process;  (2) the method of using so called tell-tale light for detecting defects while building up the condenser stacks; (3) the process of re-healing a defective condenser without dismembering the same.  These changes, improvements or inventions combined with others of minor importance may. be fairly said to constitute a change, improvement or invention in the (4) general process."

The three inventions first named were in the main those of the defendant McPherson — who was one of the six employees of the plaintiff hereinbefore referred to — "qualified only by the statement that the use of copal varnish was the suggestion of Goodwin," a defendant in the second suit.  The general process invention was the joint production of McPherson, Goodwin and Priess.  The latter is still in the employ of the plaintiff.

It is found on conflicting evidence that there was no express contract that any invention made by these employees was to be the plaintiff's property; and the evidence did not satisfy the judge that there was any understanding to that effect.

The principles governing relationship between employer and employee, so far as property in inventions is involved — using that word in the sense in which it is used in the statutes relating to patents — are well established. An invention made by an employee, in the course of his employment and at his employer's expense, is the property of the inventor unless he has by the terms of his employment, or otherwise, agreed to transfer to his employer its ownership as distinguished from its use. It matters not how valuable the invention or how vital its control may be for the success of the business in which it has been conceived. *American Circular Loom Co.* v. *Wilson*, 198 Mass. 182. *American Stay Co.* v. *Delaney*, 211 Mass. 229. *Hapgood* v. *Hewett*, 119 U. S. 226. *Dalzell* v. *Dueber Watch Case Manuf. Co.* 149 U. S. 315. *Pressed Steel Car Co.* v. *Hansen*, 137 Fed. Rep. 403. *Dempsey* v. *Dobson*, 174 Penn. St. 122.

However, as was said in *Solomons* v. *United States*, 137 U. S. 342, at page 346: "If one is employed to devise or perfect an instrument, or a means for accomplishing a prescribed result, he cannot, after successfully accomplishing the work for which he was employed, plead title thereto as against his employer. That which he has been employed and paid to accomplish becomes, when accomplished, the property of his employer." The inventions here in controversy were made while the inventors were wholly engaged in "experimental work to develop a method of manufacturing magneto condensers." That for the time being was their sole employment. They were under the direction of the plaintiff's superintendent who aided and furnished information to them. ". . . the persons concerned understood or ought to have understood that the plaintiff intended to keep the processes secret, and that any information received by them in the course of their employment was confidential information." To justify a claim of property in the inventions, it must be held that the plaintiff had no interest in that which its workmen created while engaged in this special work, except the ownership of the actual things produced considered merely as chattels, and except

a non-exclusive right to use them or the processes discovered. Such a result defeats the purpose in which they were engaged. In a case like this the nature of the employment impresses on the employee such a relationship of trust and confidence as estops him from claiming as his own property that which he has brought into being solely for the benefit and at the express procurement of his employer. The want of an express agreement that the ownership shall be in the employer is not fatal under such circumstances. This result is supported by authority. *Gill* v. *United States,* 160 U. S. 426. *Silver Spring Bleaching & Dyeing Co.* v. *Woolworth,* 16 R. I. 729. Said the court in *Gill* v. *United States, supra,* at page 435: "There is no doubt whatever of the proposition laid down in Solomons Case, that the mere fact that a person is in the employ of the government does not preclude him from making improvements in the machines with which he is connected, and obtaining patents therefor, as his individual property, and that in such case the government would have no more right to seize upon and appropriate such property, than any other proprietor would have. On the other hand, it is equally clear that, if the patentee be employed to invent or devise such improvements his patents obtained therefor belong to his employer, since in making such improvements he is merely doing what he was hired to do." See also *McAleer* v. *United States,* 150 U. S. 424, 430; *Dowse* v. *Federal Rubber Co.* 254 Fed. Rep. 308; *Ingle* v. *Landis Tool Co.* 262 Fed. Rep. 150; *Pomeroy Ink Co.* v. *Pomeroy,* 7 Buch. 293, 297; *Portland Iron Works* v. *Willett,* 49 Ore. 245. The question was expressly left open in *American Circular Loom Co.* v. *Wilson, supra.* The opinion states (page 202): "How far the rule will be held to be applicable where it appears that by the express terms of the hiring the employee was to exercise his inventive faculties with reference to the specific inventions in question for the sole benefit of his employer, we need not now consider, for that question does not arise in this case." So in *American Stay Co.* v. *Delaney, supra,* at page 232, it was noted that the defendant was not "employed to originate inventions for the plaintiff's benefit."

The finding that there was no understanding as to future inventions does not prevent us from giving the relief to which the plaintiff is entitled on the facts found. It does not negative them or weaken their effect. A careful examination of the evidence —

reported by commissioners — convinces us that no such construction can be maintained.

Goodwin, Barkley, Arthur Watson and Elbridge Watson, who are defendants in the second suit, while Goodwin was still in the plaintiff's service, formed the plan of engaging in the manufacture of magneto condensers to compete with the plaintiff " to take advantage of the secret processes and machines which had been developed, and of the confidential information Goodwin had of the plaintiff's costs of production and other details of its business, so as to start the manufacture and sale of such condensers. immediately."

Although the invention was first assigned to Watson Brothers Inc., it appears that the Mica Condenser Company, Ltd. was shortly thereafter organized by Goodwin, Barkley and the Watsons who were its only stockholders. While no express finding is made as to whether these corporations took with notice of the facts upon which the plaintiff's rights depended, it is apparent that they did so take. The Mica Condenser Company, Ltd. does not argue that it has any greater rights in or to the inventions than that which McPherson had against the plaintiff.

The bill in the second suit relates to the same condensers, alleges that they are manufactured by the use of certain secret processes and apparatus and avers that all the individual defendants therein named, except Barkley and the Watsons, were employees of the plaintiff by whom said processes and apparatus were developed and that they became acquainted therewith by reason of their employement. It further alleges the wrongful disclosure by Goodwin and wrongful use by the Mica Condenser Company, Ltd. for the purpose of their wrongful appropriation; that Goodwin without right took from the plaintiff's files and is improperly using many documents and plans belonging to the plaintiff, comprising blueprints, charts, cost sheets, reports of tests and experiments, correspondence and other engineering and office data or copies thereof, all having to do with the manufacture of said condensers; and that he has either disclosed or intends to disclose the information contained therein to the wrongful use and benefit of the defendants.

Apart from the facts already stated, some of which bear upon this subject, no finding is made that Goodwin took from the

plaintiff any of the papers or plans referred to. As the burden was on the plaintiff, the result is that it has not sustained its allegations relating to this subject. Goodwin, upon leaving the plaintiff's employ, had a right to use his general knowledge, experience, memory and skill so long as he did not use or disclose any of the secret processes which the plaintiff was entitled to keep for its own use and as to which it, as against him, had exclusive property rights. *Aronson* v. *Orlov,* 228 Mass. 1. *H. W. Gossard Co.* v. *Crosby,* 132 Iowa, 155. *Westervelt* v. *National Paper & Supply Co.* 154 Ind. 673.

When Goodwin and McPherson left the plaintiff's employ, they took with them the four other employees with whom they had been associated in experimental work for the purposes hereinbefore defined. These four are defendants in the second suit. There is no finding that they have wrongfully disclosed or used any secret processes or confidential communications and no relief can be given against them.

Although the first suit is decided on the basis that the plaintiff is entitled to relief because it is the equitable owner of the inventions already considered, it does not follow that it can get nothing under the second bill. It may be that no patent will issue because of lack of novelty or other reason and that the plaintiff will in fact receive nothing of value under any decree entered in the first suit. The fact that an invention is patentable does not compel the taking out of a patent, nor prevent the person entitled to it from keeping it secret, nor bar him from equitable relief against those disclosing its existence and details in violence of trust and confidence, nor as against those who obtain knowledge through such violation with notice and purpose to make use thereof. *Peabody* v. *Norfolk,* 98 Mass. 452. *American Stay Co.* v. *Delaney, supra. Aronson* v. *Orlov, supra. Bates* v. *Coe,* 98 U. S. 31. *Macbeth-Evans Glass Co.* v. *Schnelbach,* 239 Penn. St. 76. The fundamental requirement for relief is a violation of trust and confidence. Any one who gets the knowledge honestly can use it provided he is not restrained by the relationship under which he acquired it. *Chadwick* v. *Covell,* 151 Mass. 190.

The defendants Barkley, Elbridge Watson, Charles E. Watson, and Goodwin, as found by the judge, " formed the plan . . . to take advantage of the secret processes and machines which had

been developed, [as hereinbefore stated,] and of the confidential information Goodwin had of the plaintiff's costs of production and other details of its business." Inasmuch as the allegations as to the wrongful taking and disclosure by Goodwin of plans, records and other tangible property of the plaintiff have not been proved, the plaintiff is not entitled to relief as to such property; but it is entitled to injunctive relief as against these defendants (except Charles E. Watson, as to whom the suit was dismissed for lack of service) and as against the Mica Condenser Company, Ltd., of which they are the only stockholders and which — the findings inferentially but clearly show — has acted with notice to its officers and agents. *Fairbanks* v. *McDonald,* 219 Mass. 291.

The question of damages, for which the defendants are liable, has not been tried.

In the first suit a decree with costs to the plaintiff is to be entered, ordering the Mica Condenser Company, Ltd. to assign to the plaintiff the inventions and applications for patents hereinbefore considered and enjoining it from assigning or otherwise disposing of such inventions, and enjoining both defendants from using said inventions or any of them. If it is deemed advisable, — in order to describe and identify said inventions so that a definite decree may be entered, — the first suit may be further heard for that purpose. See Walker on Patents, § 275.

In the second suit there must be an interlocutory decree enjoining all the defendants except Keene, Danahy, Martin Illingsworth, and Charles E. Watson, as to whom the bill should be dismissed, from using or in any way disclosing the processes, changes, or inventions to which the plaintiff is entitled under this decision. The decree is to include costs in this court in favor of the plaintiff as against the defendants as to whom relief is given; the question of other costs is to stand for action in the Superior Court when the case is ripe for final decree, after it has been heard upon the question of damages.

*So ordered.*