**ATLAS BRICK CO. v. NORTH.** (No. 2042.)

Court of Civil Appeals of Texas. El Paso.
Feb. 2, 1928.

Rehearing Denied Feb. 23, 1928.

1. **Appeal and error** ⬅️218(2)—**Party not objecting to submission of issues, or to issues as submitted, held committed to theory on which material facts in issue were properly submitted.**

In action for judgment decreeing patent and its use to be vested in plaintiff, where record did not show that plaintiff made any objection to submission of certain issues, or such issues as submitted, or that plaintiff submitted or requested to be submitted any issue or charges, plaintiff was committed to theory on which material facts at issue were properly placed and submitted without objection to jury.

2. **Master and servant** ⬅️62—**Patentee's employment in and use of plant in discovering patent process held not to give employer right to patent.**

In absence of contract so providing, mere fact that patentee was employed in operating brick plant, and made use thereof in experimenting and discovery of patent process, would not of itself give employer right to patent.

3. **Master and servant** ⬅️62—**To vest title to employee's patent in employer, there must be agreement to that effect.**

To vest title to employee's patent in employer, there must be agreement that title to any invention obtained by reason of employment shall be in employer.

4. **Master and servant** ⬅️62—**Corporation's president and manager held not to occupy trust relationship, giving corporation right to his invention.**

President and general manager of corporation, operating brick plant under contract for sale to him and partner of majority of corporation's stock, *held* not to occupy trust relationship to corporation owning plant, giving it right to invention discovered by him while running plant and using plant's equipment.

5. **Corporations** ⬅️314(1)—**Corporation's officer must give corporation benefit of advantage he obtains through position.**

Corporation's officer may not make private profit for himself in discharge of his official duties, but must give to corporation benefit of any advantage which he has obtained thereby.

6. **Corporations** ⬅️314(1)—**On accounting, corporation's officer, making private profit in corporate affairs, is liable to corporation for funds remaining in his hands, in absence of showing as to proper disposition thereof.**

On accounting, where it is found that corporation's officer has made profit in management of corporate affairs, to relieve him it must appear that proper disposition has been made of such fund, and in absence of such showing he is liable to corporation for fund remaining in his hands.

7. **Corporations** ⬅️314(1)—**Where net profit to corporation's officer in managing corporation's affairs remains, liability against him remains until proper disposition thereof shown.**

Where net profit to corporation officer in management of corporation's affairs remains liability against such officer remains until proper disposition of such liability is shown.

8. **Corporations** ⬅️314(2) — **Corporation's president and manager held not liable for net profits on sales of corporation's product to himself and another at a fair price.**

In accounting, where jury found that sale of corporation's product was at fair price, corporation's manager *held* not liable for net profit on corporation's product sold to himself and another.

9. **Trusts** ⬅️179—**Law requires absolute good faith of trustees dealing with trust property.**

Law exacts of trustee absolute good faith in dealing with trust property, but trustee has not absolute duty wholly to avoid doing anything which is fair and right, though he might benefit thereby.

10. **Trusts** ⬅️231(1)—**Trustee's obligation is to make full, fair, and complete disclosure to beneficiaries of all circumstances attending all transactions which will benefit himself differently from benefit to shareholders.**

Obligation of trustee to beneficiaries is to make full, fair, and complete disclosures of all circumstances attending all transactions which will benefit himself in any manner different from manner in which all shareholders will be benefited.

11. **Trusts** ⬅️231(2)—**Trustee may buy property of corporation of which he is trustee with knowledge of directors and stockholders.**

Trustee may buy property of corporation of which he is trustee with full knowledge of directors and stockholders.

12. **Trusts** ⬅️231(2)—**Trustee of corporation purchasing its property must account for full value thereof.**

Trustee of corporation, acting with knowledge of its directors and stockholders in purchasing corporation's property, must account for full value of property purchased.

13. **Trusts** ⬅️231(2)—**Trustee's purchase of trust property is not necessarily invalid, but is subjected to severest scrutiny.**

Trustee's purchase of trust property is not necessarily invalid, but is subjected to severest scrutiny, and profit to trustee will not be permitted, unless all appearance of bad faith is removed.

14. **Appeal and error** ⬅️1033(1)—**Error favorable to appellant affords no ground for reversal in his behalf.**

Trial court's error favorable to appellant cannot be complained of by him, and affords no ground for reversal in his behalf.

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**15. Appeal and error ⊜1033(7)—In cases submitted on express issues, judgment for appellant on some issue contrary to controlling finding of fact affords no ground for reversal in his behalf.**

In cases submitted on special issues, judgment in favor of appellant on some issue contrary to controlling finding of fact by jury thereon affords no ground for reversal on behalf of appellant.

**16. Appeal and error ⊜1033(7)—Appellant held not entitled to complain of court's disregarding jury's finding on special issue, pertinent only to issue of shop right which court awarded appellant.**

In suit by corporation to recover patent granted to its president and manager, jury's finding on special issue that manager, while in control, did not use corporation's time, material, labor, and equipment in aid and discovery of invention, was pertinent only to issue of shop right in corporation's favor, and in view of fact that court awarded such right to it, corporation could not complain on appeal of court's action in disregarding jury's finding.

**17. Trial ⊜351(2)—Issue whether corporation's officer intended to give and did give it shop right to use invention held for court, in absence of submission to jury or proper request therefor.**

In suit by corporation to recover patent granted to its president and general manager, in absence of submission to jury or proper request for submission of issue whether corporation's manager intended to give and did give corporation shop right to use patented process, such issue was for court.

**18. Appeal and error ⊜930(3)—On appeal it will be presumed, in support of judgment, that court found that corporation's officer intended to give and did give corporation shop right to patent, if evidence supports it (Rev. St. 1925, art. 2190).**

In suit by corporation to recover patent granted to its president and general manager, where through failure to request submission to jury, issue whether corporation's manager intended to give and did give shop right to use of patent to corporation was reserved to trial court, it will be presumed on appeal, under Rev. St. 1925, art. 2190, in support of judgment awarding corporation shop right, that trial court found such issue in favor of corporation, if there is evidence to support such finding.

**19. Trial ⊜351(2)—In deciding whether corporation's officer gave corporation, relying on contract, shop right to patent, trial court was required to accept as true jury's finding that officer did not use corporation's time, material, labor, or equipment in discovering invention.**

In corporation's suit to recover patent granted to its president and general manager, in which, through failure of submission to jury, issue whether corporation's manager gave corporation, which relied on express contract that patent should belong to corporation, shop right to use of patent, was reserved to trial court, in

passing on such issue, court was obliged to accept as true jury's finding on special issue that manager did not use corporation's time, labor, and equipment in aid of discovery or invention.

**20. Master and servant ⊜62—Corporation's use of patented process without charge held to support finding that general manager as patentee, gave and intended to give corporation shop right.**

Fact that corporation's president and general manager was in charge under contract for purchase of majority of outstanding stock, and discovered patented process, and permitted corporation to use it for long time without charge, *held* to support court's finding that he intended to give and did give shop right to use of patent to corporation.

**21. Trial ⊜351(2)—Finding that corporation's officer did not use corporation's time, material, labor, and equipment in making invention held not controlling on issue of corporation's shop right to use patent.**

Where corporation's president and general manager was in control under contract to buy majority of stock, and while in control discovered patented process, which he permitted corporation to use for long time without charge, jury's finding on special issue that, in inventing process, manager did not use corporation's time, material, labor, or equipment, was not controlling, on issue of whether corporation had shop right to use of patent.

**22. Judgment ⊜256(1)—Court may disregard findings on immaterial or noncontrolling issues.**

In rendering judgment, trial court may disregard findings on immaterial or noncontrolling issues.

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Action by the Atlas Brick Company against Clarence Lupfer North. From the judgment below, both parties appeal. Affirmed.

J. E. Quaid, Winter & Winter, Jos. U. Sweeney, and Turney, Burgess, Culwell, Holliday & Pollard, all of El Paso, for plaintiff.

Lea, McGrady, Thomason & Edwards and Goggin, Hunter & Brown, all of El Paso, for defendant.

WALTHALL, J.   This is the second appeal in this case, the former appeal being reported in 281 S. W. 608, where the case is fully stated by this court, except as to an accounting prayed for by appellant, and in 288 S. W. 146, where the opinion of the Commission of Appeals is to be found.

While the facts found by the jury on the former trial are different from the facts found on this second trial, the issues on the two trials not being materially different, we think we may refer to the former statement of the case as showing in general outline the history of the case and the contentions made by the parties litigant, without restating

them at length. On this trial appellant asked for an accounting, and on that part of the case new issues are presented.

This present appeal is by the Atlas Brick Company from the judgment rendered by the district court, based upon the verdict of the jury returned and accepted by the trial court on special issues submitted, except as to one issue, which the trial court refused to accept, and of which we later state more at length. Upon the issues found by the jury, and upon the one issue which the court refused to accept, and upon the facts found by the court not submitted to the jury, the court rendered final judgment.

On the special issues submitted the jury found:

(1) The defendant, C. L. North, as a part of his employment as president and general manager of the Atlas Brick Company, did not agree to try to improve the process of manufacture of the brick.

(2) It was not at any time understood or agreed between the defendant, North, and the Atlas Brick Company, that any process or invention that North might devise or invent while operating plaintiff's plant, for the manufacture of brick, should be the property of the Atlas Brick Company.

(3) The defendant, C. L. North, while in control and management of the plaintiff company and its properties, did not use the time, material, labor, and equipment of the company in aid of the discovery or invention of the "klinker brick."

(4) We find the sum of $141,817.55 to be a fair price for the plaintiff company to have received for its entire product during the time the defendant, C. L. North, was president and general manager of the company.

(5) The proportionate rental value of the land leased to the Atlas Brick Company by Sheehan-North Company to the rental value of the land leased by the El Paso & Southwestern Railroad Company to the Sheehan-North Company is 33⅓ per cent.

To the court's supplemental question No. 8, submitted in lieu of defendant's special issue No. 8, the jury found:

A net profit accrued to Sheehan-North Company, or the El Paso Building Material Company, through the sale of brick manufactured at the Atlas Brick Company plant from July 12, 1920, to January 19, 1925.

The court overruled plaintiff's motion for judgment and entered judgment as hereinafter stated. The judgment recites that the court, on the facts or issues not submitted to the jury, makes certain findings all of which we will not state at this time. The judgment further recites:

"And the court further finds that the finding of the jury to question No. 3 is contrary to, and opposed to, the overwhelming weight of the evidence, and that, if such finding should control the judgment herein rendered, it would be the duty of the court and the court would set aside said judgment as being against the weight of the evidence, unless the defendant would agree and grant to the plaintiff a right, without charge, to use the method of manufacturing brick which was patented to the defendant, North, by patent No. 1,440,234, and to manufacture brick by such method and sell such brick from its plant in El Paso, Tex., but not manufacture brick elsewhere; but the court does not consider that the finding of the jury to question No. 3, referred to, controls this judgment as rendered.

"Wherefore it is ordered, adjudged, and decreed that, on account of the finding of the jury to question No. 5, the plaintiff, Atlas Brick Company, have and recover from the defendant, Clarence Lupfer North, the sum of $2,409, with interest thereon from July 1, 1925, at the rate of 6 per cent. per annum until paid. It is further ordered, adjudged, and decreed that the plaintiff, Atlas Brick Company, so long as it continues in business, shall have the right to use, in its plant in El Paso, Tex., all of the rights, privileges, powers, processes, and methods in the manufacture of brick given, granted, and secured to the defendant, C. L. North, in, by, and under patent No. 1,440,234, issued by the United States of America to C. L. North, on the 26th day of December, 1922, and the right to sell the product of such manufacture, without the payment of royalty to, or any other charge by, the defendant, C. L. North, or his heirs or assigns."

The court further decreed that as to the title to the patent sued for the plaintiff take nothing, and that the title thereto be vested in North. Both plaintiff and defendant excepted to the judgment. The court overruled plaintiff's motion for judgment, and plaintiff excepted. Motions for new trial of each were overruled, and each assign error and appeal.

### Opinion.

Appellant Atlas Brick Company's first three propositions are, substantially, to the effect: First, that the "uncontroverted evidence" shows that at the time of discovery of the patent process appellee North was president and general manager, and as such its trustee and the alter ego of appellant company, and in the discharge of his duties the work done by North and his employees in perfecting the process and patent was done at the plant of appellant, on appellant's time, with appellant's money, material, and equipment, during the ordinary operation of appellant's brick plant, "thereby vesting absolute title to patent in plaintiff." The second proposition is to the effect that, because the "uncontroverted evidence" establishes the facts stated in the first proposition, it was error not to render judgment for appellant, for title to the patent. The third proposition recites the facts stated in the first proposition, with the additional statement that:

"Defendant, North, by adopting said process and use of same by plaintiff, destroyed former business of plaintiff in its manufacture of sand-

lime brick; thereby the said patent No. 1,440,-234 became property of plaintiff."

Appellant then quotes at length from the evidence to sustain its view of what the evidence shows on the facts stated.

We do not concur in the statement, made in the propositions, that the "uncontroverted evidence" establishes all of the facts stated in the propositions, as we understand the facts stated or intended to be stated in the propositions. The uncontroverted evidence does show, and the petition and answer disclose, that at the time of the discovery by appellee of the process for the manufacture of the Atlas klinker brick, and at the time the process was patented to appellee, appellee was the president and general manager of the Atlas Brick Company, and in the active management of its plant, and that tests made by appellee in discovery of the process for making the Atlas klinker brick were made at the appellant's brick plant, and at the time appellee was the president and general manager of appellant, and on its pay roll. Appellant in its petition based its right to the patent on an expressed understanding and agreement between it and North, and not on duties assumed by North as president and general manager.

Then, in the absence of any agreement as to appellee's duties as president and general manager of appellant, would the admitted facts that appellee was such officer and on its pay roll, and that while such and in the active discharge of such general duties as pertain to such position in the manufacture of brick, would it follow, as a matter of law, that the title to the patent would vest in appellant, as asserted in the proposition?

In the first amended original petition, upon which appellant went to trial, on the branch of the case now being considered, it is alleged:

"That it was expressly understood and agreed by and between the plaintiff (Atlas Brick Company) and the defendant (North) at the time of the employment of the defendant by the plaintiff, as its president and general manager, that the defendant was to have general charge of the manufacture of brick by the plaintiff company, and especially in the development, devising, or invention of a process for the improvement of the product manufactured by the plaintiff, and that any improvement, device, or invention made by the defendant in the process for the manufacture of brick was to be for the plaintiff company and for its benefit, and its property, in consideration of the compensation paid the defendant by the plaintiff, and that any device, invention, or improvement made in the process of the manufacture of brick was to become the property of the plaintiff company."

After alleging the written contract with F. B. Stuart, referred to elsewhere, for the sale and purchase of Stuart's stock in the Atlas Brick Company, and the circumstances of his employment as general manager of the company, which we need not here state more at length, defendant specially denied that at any time or place did he ever agree that Stuart or the Atlas Brick Company should ever either directly or indirectly have, take, or acquire any interest or property right whatsoever in or to the patent, or that he would assign the same or any interest therein to the Atlas Brick Company, or any other person, thus joining issue on the fact of the agreement as pleaded by appellant.

[1] The case was tried on the theory of such agreement as alleged. The court heard the evidence pro and con on the issue of such agreement, and submitted the issues of fact as to such agreement, and the jury made findings on the issues as shown in special issues 1 and 2, and judgment was entered on the issues submitted and found. The record does not show that appellant made any objection to the submission of the two issues, or as submitted; nor does the record disclose that appellant submitted or requested to be submitted any issue or charges. Appellant is committed to the theory upon which the material facts at issue were properly placed and submitted, without objection, to the jury. Rogers v. Rogers (Tex. Civ. App.) 230 S. W. 489; Kirby Lumber Co. v. Conn, 114 Tex. 104, 263 S. W. 902; Riedel v. Wenzel (Tex. Civ. App.) 186 S. W. 386, and other cases we have reviewed, which settle the law as above stated.

[2] But, aside from the above, the facts stated in the propositions, as to appellee's employment in operating the brick plant and the use made of the plant by appellee while in charge of the plant at the time, and the use made of the plant in the discovery of the patent process, in the absence of some agreement as to the ownership of the patent, such as pleaded by appellant, the title to the invented process and the patent issued thereon would not, we think, vest in the appellant Atlas Brick Company, as contended for by appellant under the propositions.

[3] To vest the title in appellant, there must be some agreement between the employer and employee, substantially as alleged, and to the effect that, whatever invention the employee may conceive and perfect, under his contract of employment, his employer should have the title to such invention, or to any patent that he might obtain by reason of his employment. In other words, the right of title to the invention itself represented by or embraced in the issued patent, as distinguished from a license to use such invention, rests in an agreement between the employer and the employee. We so understand the holding of the Commission of Appeals, section A, in its discussion of this case on appeal. 288 S. W. 146. In discussing the question now under consideration, under the facts then found and the issues then presented, substantially as here, Judge Nickels, in writ-

ing the opinion for the Commission of Appeals, says:

"It seems to us that the rules of law applicable to such cases as this are laid down in Solomons v. United States, 137 U. S. 342, 11 S. Ct. 88, 34 L. Ed. 667, to this effect: (a) The mere fact that an inventor at the time of his concept is in another's service is not sufficient to give the employer an interest in or title (or right of title) to the invention. This is so because the employee may perform all of the duties properly assignable to him, and during the same period independently exert his conceptive faculties, 'with the assurance that whatever invention he may thus conceive and perfect is his individual property.' (b) But, if he be employed 'to devise or perfect an instrument or a means for accomplishing a prescribed result, he cannot, after successfully accomplishing the work for which he was employed, plead title thereto as against his employer or, it may be added, rightly decline formal transfer of title. Standard Parts Co. v. Peck, 264 U. S. 52, 59, 44 S. Ct. 239, 68 L. Ed. 560, 32 A. L. R. 1033. (c) And, when one is in the employ of another, in a certain line of work, and devises an improved method or instrument for doing that work, and uses the property of the employer or the services of coemployees to develop and put in practicable form his invention, and assents to the use by the employer of such invention, the jury upon those facts may properly find that he intended to give, and did give, to the employer 'an irrevocable license to use such invention'; i. e., a shop right."

The difficulty we find in the disposition to be made of the case is in the application of subdivision (c) of the above quotation, and the observation of Judge Nickels following, in which it is said that "it ought to be added that the true contract between the parties may rest in parol as effectively as in writing, and that what the words used and the facts imply are as competent in results as an expressed agreement," referring to Gill v. U. S., 160 U. S. 426, 16 S. Ct. 322, 40 L. Ed. 480; Standard Parts Co. v. Peck, supra; Wireless Specialty Co. v. Mica Condenser Co., 239 Mass. 158, 131 N. E. 307, 16 A. L. R. 1170. In the subdivision (c), and the observation thereunder as above, the court is speaking of a license to use such invention, as distinguished from the ownership or title to the invention itself.

After stating the facts in the subdivision (c) it is said the jury upon those facts may properly find that he, the employee, intended to give, and did give, to the employer an irrevocable license to use such invention; i. e., a shop right. The statement by the court of the facts in subdivision (c), and what the jury might properly find, had reference to the facts found by the jury on the former trial of this case. The court simply said that the finding could be sustained on the facts stated when so found.

Here, by the findings of the jury, there was no agreement that North should try to improve the process of manufacture of the brick, and no agreement that any process or

invention devised or invented while operating the plant should be the property of the appellant company. We do not understand the Commission of Appeals to hold that, in the absence of an agreement, the facts stated in subdivision (c) would, as a matter of law, give the employer the license to use the invention, but that from the facts stated, and so found, the jury could properly find an intention to give and a giving of the license.

We think we need not review the cases referred to by Judge Nickels, since the issues then and there discussed are practically the same as now, with a difference only in the findings of the jury. We might add, however, that we have reviewed said cases, and also Wireless Specialty Co. v. Mica Condenser Co., 239 Mass. 158, 131 N. E. 307, 16 A. L. R. 1170, Hapgood v. Hewitt, 119 U. S. 226, 7 S. Ct. 193, 30 L. Ed. 369, and Dalzell v. Dueber Watch Co., 149 U. S. 315, 13 S. Ct. 886, 37 L. Ed. 749, and believe they sustain the conclusion we have reached as stated. It would extend the opinion to too great length to review them here or quote from them.

[4] It is also insisted that North sustained a trust relationship to the Atlas Brick Company as general manager, and for that reason what acts were done by him in that relation are deemed to be done in benefit of the trust, and we are referred to John v. Battle, 58 Tex. 598. After a review of many authorities, without quoting them here, we have concluded that the circumstances under which North was put in possession and management only of the physical properties of the company, as disclosed by the written contract and other facts in connection with his possession, the John v. Battle Case has no application; the patent and patent process not being a part of nor emanating from the company's properties, but a concept of North independent thereof. The above as to the trust relation has no reference to the products purchased by Sheehan & North, discussed later.

Appellant's propositions 4 to 9, both inclusive, will be later considered in connection with appellee's cross-assignments of error.

We now turn to another branch of the case. Appellant alleged that it was entitled to an accounting from North as to the profits made by North in the sale of the brick during the time he was in charge of the brick plant as general manager. On the issue of accounting the court submitted question No. 4:

"What sum do you find to be a fair price for the plaintiff company to have received for its entire product during the time the defendant, C. L. North, was president and general manager of the company?"

The jury answered: "$141,817.55." That sum was paid to and received by the appellant. The jury found that a net profit accrued to Sheehan & North through a sale of the brick manufactured at the Atlas Brick

Company plant at the time North was general manager.

The judgment recites that on the facts or issues which were not submitted to the jury the court finds that the net profits made by North and his associates in the management of the brick plant, from the sale of the brick during the time North was president and general manager of appellant company, was $15,228.51, and which amount appellant was not entitled to recover.

Appellant's petition, in its second count, alleges, in substance, the following: North's official position as president and general manager of appellant; that North was to devote his entire time to the interests of appellant, and that thereby a trust and fiduciary relationship was created and existed between North and appellant; that among his duties North was to sell the manufactured products of appellant at the best price obtainable; that he entered into a contract with himself, or with his partnership of Sheehan & North, or with the El Paso Building & Material Company, of which North owned the whole or controlling interest, for the sale to himself of the entire brick output, at prices stated, to his advantage, and to the disadvantage of appellant, which it is alleged was a fraud upon appellant. The petition then at length alleges in substance that appellant sold to himself brick at less than the market value, and less than the price at which he sold to the trade; that during the period of North's management there was manufactured and sold a large amount of brick (stating the amount which North appropriated to himself); that by reason of the facts stated a resulting and constructive trust resulted; that appellant is entitled to an accounting, and as to the profits made by North in the sales of brick, and to recover the amount found.

Under propositions 10, 11, and 12, appellant claims, in substance, that it is entitled to judgment against North for the profits realized from the sale of the brick, while he was president and general manager of appellant corporation. Appellee submits that, in view of the fourth special finding that $141,748.58, paid and received by appellant for its product, was a fair price for the company to have received for its entire product while North was its general manager, and that such finding necessarily involved a finding that the dealings between the parties were fair and in good faith, and the issue as to good faith and fair dealing not having been submitted or requested to be submitted, or finding made thereon, appellant is bound by the presumed finding in the judgment that such transactions were fair and in good faith; that, the court having denied recovery for profits or damages growing out of the sales made, every presumption will be indulged in favor of fair dealing and good faith; and that appellant is now precluded from raising any other theories.

Appellant's suit is not one to set aside any sale or transaction had in the disposition made of the products of the brick plant under North's management. The jury's finding, that the sum of $141,817.55 was a fair price for the entire product of the plant output while North was in charge, sufficiently determined the issue of accounting on all items involved in the question of the sales of brick, their values, the overhead expenses, and the disposition made of the proceeds. The court made a finding of fact additional to that submitted to the jury under above question 4, to the effect, as we understand it, that in addition to the sum of $141,817.55, and not a part thereof, a "gross profit" of $35,543.54 was made during the time of North's management of the brick plant, and that after deducting certain mentioned items of expense, which the court allowed, a net profit of $15,228.51 was realized, and the court's conclusion of law as stated is that appellant is not entitled to recover such net profit. The court made no statement or findings of facts from which he concluded that appellant was not entitled to the net profit as found, and he was not requested to make such finding.

[5, 6] It is a cardinal principle that an officer of a corporation will not be permitted to make a profit out of his official position, but must give to the corporation the benefit of any advantage which he has thereby obtained; the law will not permit him to make a private profit for himself in the discharge of his official duties. Tenison v. Patton, 95 Tex. 284, 294, 67 S. W. 92; 7 R. C. L. § 442; 1 Perry on Trusts and Trustees (6th Ed.) pp. 496, 692. Where it is found, in an accounting, that a profit has been made in the management of the corporate affairs, in order to relieve the officer in charge of liability for the profit so found, it must appear that a proper disposition has been made of such fund, and, where such has not been so made to appear, such officer is liable to the corporation for the fund remaining in his hands.

[7, 8] We are not prepared to say that the overhead expenses allowed by the trial court of the gross profits, made in good faith, were not properly allowed. But, where a net profit remains, a liability against the officer in charge also remains until a proper discharge of such liability is shown. Appellee suggests that it will be presumed that the court found facts which support the court's conclusion of law. The conclusion reached by the court is in appellee's favor. The court expressed no finding in the judgment, or elsewhere in the record, so far as we have found, as a basis for the conclusion reached that appellant "is not entitled to recover the $15,228.51," the sum at which the court fixed the net profits.

In discussing propositions 10, 11, and 12, appellee refers to the jury's finding No. 4, which finding refers to the sum received by appellant for its products, and, as we view it, has no direct reference to the profits earned.

The trial court evidently so viewed it, as the court made findings additional to those submitted, and from which the conclusion now discussed is reached.

As we understand the facts involved in the proposition the profits realized by Sheehan and North were made from products of the Atlas Brick plant, which Sheehan and North sold to themselves, or to the subsidiary company, and in connection with North's patent process used by Sheehan and North in making brick at the plant, and without a charge to appellant company for the use of the patent process. The jury found the prices received by the company were fair for the company to have received for its entire product during the time North had charge. The jury's finding on the issue submitted has much to do with the question now being considered. Appellant made no objection to the submission of the issue, and submitted no issue of fact in connection therewith, touching the fairness or good faith of the transactions involving the sale of brick to Sheehan and North, but abiding the result of the jury's finding.

[9-13] The law exacts of trustees absolute good faith in dealing with trust property, but, as we understand the rule of our Texas courts, they do not impose upon a trustee an absolute duty to wholly avoid the doing of anything that is fair and right to do, though the trustee might benefit thereby. The obligation of a trustee to his beneficiaries in the trust property is to make full, fair, and complete disclosures of all circumstances attending all transactions which will benefit himself, in any manner different from the manner in which all of the shareholders will be benefited. He may buy property of the corporation of which he may be its trustee, with the knowledge of its directors and stockholders, and where he does so he must account for the full value of the property so purchased. Such a transaction is not necessarily invalid. Such transactions are subjected to the severest scrutiny by the courts, and trustees will not be permitted to benefit thereby, unless all appearance of bad faith is removed.

Fletcher, Cyclopedia of Corporations, vol. 4, at page 3553, after stating that by the weight of authority "the fact that a person is a director or other officer of a corporation does not prevent him from entering into a contract with the corporation or selling its property, or purchasing property from it," etc., "if the corporation is represented by other officers, and there is no fraud," makes the observation that, "if a contract between a corporation and one of its officers is a valid one, he cannot be compelled to account for profits subsequently made under such contract or in dealing with the subject-matter of the contract," and in the note thereunder refers to Tenison v. Patton, 95 Tex. 284, 67 S. W. 92. In the same paragraph as above it is said:

"So, if a transfer of corporate property to a director is valid, and there is no ground for setting it aside, his trusteeship as to such property ends, so that the corporation cannot hold him for profits thereafter made in connection with the property,"

And it again refers to Tenison v. Patton, supra.

We have concluded, in view of the record before us, that the trial court was not in error in holding that appellant was not entitled to recover the profits realized from the products of the brick plant purchased from appellant.

Appellant, by propositions 4 to 9, both inclusive, asserts that question 3 was a material issue; that the finding of the jury thereon is contrary to the undisputed evidence, or, in any event, to the overwhelming weight of the evidence, as the trial court so found; wherefore the court should have rendered judgment in appellant's favor for the patent, or should have set the verdict and judgment aside and granted a new trial.

Appellee cross-assigns error to that portion of the judgment awarding appellant a license to use the process, because such award is contrary to the jury's finding upon question 3. Appellant predicated its right to the patent upon an express contract, as has been above shown. The first two findings are adverse to it upon that issue. Finding 3 is irrelevant to the issue of the express agreement pleaded by appellant as to the patent right. Its propositions 4 to 9, in so far as they assert a patent right, simply because the evidence shows North used the time, labor, material, and equipment of the company in aid of the discovery, are without merit, as above shown.

As is apparent from Justice Nickels' opinion, the fact that North used the time, material, labor, and equipment of the company in aid of the discovery is an evidentiary issue only upon the ultimate controlling issue of whether North intended to give and did give to the company an irrevocable license to use the invention, i. e. a shop right. It thus appears that issue 3, while a material evidentiary issue, was not the ultimate nor the controlling issue upon the question of a shop right.

[14] It is a well-settled rule of appellate practice that an error of the trial court favorable to the appellant cannot be complained of by him, and affords no ground for reversal in his behalf.

[15] In cases submitted upon special issues, and in accordance with this rule it has been held that a judgment in favor of appellant upon some issue in the case which is contrary to a controlling finding of fact by the jury upon that issue, affords no ground for reversal in behalf of the appellant. Smith v. Hessey, 63 Tex. Civ. App. 478, 134 S. W. 256; Houston & T. C. Ry. v. Weaver (Tex. Civ. App.) 41 S. W. 846; Beale's Heirs v. Johnson, 45 Tex. Civ.

App. 119, 99 S. W. 1044; Capps v. Longview (Tex. Civ. App.) 178 S. W. 730; Independent, etc., v. Mayley (Tex. Civ. App.) 220 S. W. 647.

[16] Since issue 3 was pertinent only to the issue of a shop right in appellant's favor, and the court has awarded such right to it, appellant cannot complain of the court's action in disregarding the finding of the jury thereon. Had the issue been answered in the affirmative, it could not possibly have availed appellant more than has been awarded to it by the judgment rendered. We therefore overrule appellant's propositions 4 to 9, inclusive.

As to the cross-assignments of the appellee, if these be sustained, a reversal would follow in behalf of the appellant, for the ground of our action in overruling appellant's propositions 4 to 9 would be removed. However, we are of the opinion the cross-assignments should be overruled.

[17] The ultimate or controlling fact upon which the question of shop right depends is whether North intended to give and did give such right to the appellant. Such ultimate issue was not submitted to the jury, nor was proper request for its submission requested by appellee. Appellee's question No. 6 related to the same, but was not properly drawn and was properly refused by the court. The issue not having been submitted to the jury, nor proper request made for its submission, it was reserved for the court to pass upon the issue of whether North intended to give and did give a shop right to use the process to appellant. Eisenstadt, etc., v. Copeland (Tex. Civ. App.) 149 S. W. 713; Crowley v. Chapman (Tex. Civ. App.) 260 S. W. 231; Baker v. Coleman Abst. Co. (Tex. Civ. App.) 248 S. W. 413.

[18, 19] In support of the judgment it will be presumed that the trial court found such issue in favor of appellant, if there is evidence to support such finding. Article 2190, R. S. 1925. If there was such evidence, independent of the facts found in issue 3, the presumed finding of the trial court should be sustained. In passing upon such issue, the court was obliged to accept as true the finding that North did not use the time, material, labor, and equipment of the appellant in aid of the discovery or invention.

[20] At the time he made the discovery North was president and general manager of the company. He rested under the duty of promoting the company's best interests. He and his associate, Sheehan, were in complete control of the company under a contract whereby they expected to become the owners of about 75 per cent. or more of the outstanding capital stock of the company. While thus situated, North discovered the process and permitted the company for a long time to use the Klinker process of making brick without charge. These facts alone, in our opinion, would have supported a finding by the jury that North intended to give and did give a shop right to appellee. If such facts would have supported such a finding by the jury, they of course will support such a finding by the court, and in support of the judgment it will be presumed the trial court did so find.

[21] We think the trial court was correct in its ruling that the finding of the jury upon issue 3 was not controlling upon the right of appellant to the shop right. Had the ultimate issue controlling that question, as above stated, been likewise submitted to the jury, and answered in the affirmative, judgment in appellant's favor for the shop right would have been properly rendered, for in the state of the evidence there would have been no necessary conflict in such affirmative finding and the negative finding upon the purely evidentiary facts embraced in question 3. In other words, the jury might have found that North did not use the time, material, labor, and equipment of the company in aid of the discovery, and upon the other evidence in the case have found that North intended to give and did give the shop right to appellant.

[22] In the rendition of judgment the trial court may disregard findings upon immaterial or noncontrolling issues. Kelley v. Ward, 94 Tex. 289, 60 S. W. 311.; Krenz v. Strohmeir (Tex. Civ. App.) 177 S. W. 178; National, etc., v. Reveire (Tex. Civ. App.) 209 S. W. 799; Stark v. George (Tex. Civ. App.) 237 S. W. 949.

For the reasons stated, appellee's cross-assignments are likewise overruled, and the judgment of the lower court is affirmed.

Affirmed.